**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

KELVIN DELACRUZ,

               Plaintiff,

         -v-                                  9:24-CV-664 (AJB/DJS)

C.O. BRENDAN RICCI, *et al.*,

               Defendants.

_____

**Hon. Anthony Brindisi, U.S. District Judge:**

## DECISION and ORDER

### I.     INTRODUCTION

On May 15, 2024, plaintiff Kelvin Delacruz ("plaintiff"), an individual formerly in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), commenced this 42 U.S.C. § 1983 action alleging that several correction officers violated his constitutional rights while he was incarcerated at Greene Correctional Facility ("Greene") in Coxsackie, New York. *See* Dkt. No. 1 ("Compl.").

The complaint arises from two alleged incidents of excessive force. First, plaintiff alleges that, on July 13, 2023, correction officer Brendan Ricci ("C.O. Ricci") violently attacked him in the mess hall at Greene. *See* Compl. ¶¶ 4–6, 26–29. Second, plaintiff alleges that, on August 15, 2023, C.O. Ricci and correction officers Todd Shoemaker ("C.O. Shoemaker") and Dustin Vanhouse ("C.O. Vanhouse") assaulted plaintiff in a protracted attack unfolding at multiple locations throughout the facility. *Id.* ¶ 4–12, 30, 33–34. According to plaintiff, other DOCCS officers witnessed the August 15, 2023, attacks but failed to intervene. *Id.* ¶¶ 13–21, 30–37.

Following a period of discovery, defendants moved for partial summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.  Dkt. No. 26.  The motion has been fully briefed, *see* Dkt. Nos. 33, 34, and will be considered on the basis of the submissions without oral argument.

## II.    BACKGROUND[1]

On July 13, 2023, plaintiff exited the mess hall at Greene with an orange in his pocket when C.O. Ricci approached him.  *See* Pl.'s Add'l Facts, Dkt. No. 33-2 ¶ 1; Pl.'s Decl., Dkt. No. 33-1 ¶ 2; Pl.'s Dep., Dkt. No. 26-4 at 24–25.  According to plaintiff, C.O. Ricci took the orange, grabbed plaintiff by his shirt collar, dragged him down a corridor, and shoved him against a wall. Pl.'s Add'l Facts ¶ 2; Pl.'s Decl. ¶ 2.  Then, plaintiff claims that C.O. Ricci smashed the orange against plaintiff's head multiple times and forced portions of the orange into plaintiff's mouth. Pl.'s Add'l Facts ¶¶ 3–4; Pl.'s Decl. ¶¶ 4–5.  Plaintiff contends that he neither disobeyed any orders nor did anything else to provoke the encounter.  Pl.'s Add'l Facts ¶¶ 5–6; Pl.'s Decl. ¶¶ 6–7.  C.O. Ricci, for his part, testified that he does not recall this incident.  Ricci Dep., Dkt. No. 26-9, at 48.

Following the incident, plaintiff reported to the infirmary complaining of head and neck pain.  Pl.'s Add'l Facts ¶ 7; Pl.'s Decl. ¶ 8.  There, medical staff examined plaintiff and observed that plaintiff's oral cavity was intact, he had a full range of motion in his neck and extremities, and he exhibited no visible abrasions or injuries.  Pl.'s Resp. to Def.'s Facts ("Pl.'s Resp."), Dkt. No. 33-2 ¶¶ 4–6;[2] *see* July 13 Sec. Exam, Dkt. No. 26-11.  Plaintiff nevertheless reported left-sided neck pain that he rated as an eight on a ten-point scale.  Pl.'s Resp. ¶ 5; July 13 Sec. Exam.

---

[1]  The following facts are taken from a comparison of the parties' Local Rule 56.1 Statements.  *Compare* Dkt. No. 26-2, *with* Dkt. No. 33-2.  Because plaintiff is the non-movant, the Court will adopt his version of events, to the extent those events are supported with non-conclusory citations to the record in accordance with the requirements of Local Rule 56.1.

[2]  Plaintiff's responses to defendants' statement of material facts, *see* Dkt. No. 33-2 at 1-8, and plaintiff's statement of additional material facts, *see id.* at 9-12, are contained in the same document.  For the sake of clarity, the Court cites to plaintiff's responses to defendants' statement of material facts as "Pl.'s Resp." and to plaintiff's statement of additional material facts as "Pl.'s Add'l Facts."

Medical staff ultimately diagnosed plaintiff with a neck strain, prescribed him ibuprofen, and instructed him to perform stretching exercises and use ice to relieve his neck pain. Pl.'s Resp. ¶ 7. Plaintiff's head and neck pain subsided approximately two days later, and it has not returned since. *Id.* ¶¶ 8–9; Pl.'s Dep. at 36–37.

A second alleged incident occurred on the morning of August 15, 2023. *See* Pl.'s Add'l Facts ¶ 9. According to plaintiff, C.O. Ricci approached him inside plaintiff's dormitory cube, motioned for him to come over, grabbed him by the back of the neck, and demanded that he "spit it out." Pl.'s Dep. at 45–46. But plaintiff maintains that he had nothing in his mouth at that time. *Id.* at 45.

Plaintiff testified that C.O. Ricci then began striking him, causing plaintiff to dive underneath his bed and attempt to shield himself from further blows. Pl.'s Dep. at 46. After that, C.O. Ricci, C.O. Shoemaker, and C.O. Vanhouse pulled plaintiff from beneath the bed, C.O. Shoemaker handcuffed him, and the three C.O.s pinned him to the ground. *Id.* at 46 ("I threw my . . . hands behind my back so I could get cuffed. I get cuffed by [C.O.] Shoemaker, and . . . [C.O.] Ricci is laying on the front side of me. [C.O.] Shoemaker ended up . . . getting on top of me and [C.O.] Vanhouse is . . .around my leg area."). According to plaintiff, C.O. Ricci kicked him in the head while C.O. Shoemaker and C.O. Vanhouse twisted his ankle, causing plaintiff to lose consciousness. *Id*. at 46–47.

At the time of the alleged assault, C.O. Bullock was plaintiff's dorm officer. Pl.'s Add'l Facts ¶¶ 10, 13; *see* Bullock Dep., Dkt. No. 26-10. Plaintiff estimates that the assault in his cube lasted between one and three minutes. Pl.'s Add'l Facts ¶ 11; Pl.'s Decl. ¶ 12. According to plaintiff, C.O. Bullock remained at the bubble area immediately outside plaintiff's cube and had a

direct view of the incident but took no action to stop it.  Pl.'s Add'l Facts ¶¶ 13–15; Pl.'s Decl. ¶¶ 14–15.

Plaintiff further alleges that, once he regained consciousness, he heard C.O. Shoemaker telling Sgt. Pape that plaintiff had physically resisted the officers.  Pl.'s Dep. at 47.  ("I'm getting back some of my . . .consciousness and I hear . . . [C.O.] Shoemaker speaking to [Sgt.] Pape, telling him nothing but lies, that I was resisting, throwing kicks when I was doing nothing of that nature.").  Plaintiff denied resisting, and C.O. Shoemaker pinned his knee against plaintiff's neck.  *Id.* ("[M]y first instinct was reacting and I said something like, no, no, you didn't, or whatever.  And he decided to throw his knee on top of my neck and push down.").  After plaintiff was escorted to the infirmary, C.O. Ricci headbutted him.  *Id.* at 63–64.

Defendants characterize the incident differently.  In a contemporaneous use-of-force memorandum, C.O. Ricci reported that he observed plaintiff swallow a bag containing an unknown substance.  *See* Ricci Use of Force Mem., Dkt. No. 26-17 at 1.  According to C.O. Ricci, plaintiff refused orders to regurgitate the substance, pushed C.O. Ricci, and dove underneath his bed, at which point, "force became necessary."  *Id.*  C.O. Ricci further reported that plaintiff kicked and struck staff members from beneath the bed and that officers employed body holds to gain control of plaintiff and apply mechanical restraints.  *Id.* at 3.

C.O. Bullock initially testified that he observed several correction officers arriving on the unit immediately before the use-of-force incident.  Bullock Dep. at 31–32, 40, 63.  But C.O. Bullock later recalled being in Greene's day room, rather than outside of plaintiff's cube, at the time of the alleged incident.  *Id.* at 55–57; *see also id.* at 56–57 ("Q: To the extent there are programs going on in the day room and there's still incarcerated individuals in the dorm, are you

taking measures to continue to monitor the dorm area?  A: You have your senses, smell, like your . . . hearing sense.").

After the incident in the dormitory, officers escorted plaintiff from the housing unit, handcuffed him, and transported him to the infirmary by van.  Pl.'s Add'l Facts ¶¶ 15–18.  Plaintiff alleges that, during the transport, C.O. Shoemaker dragged plaintiff to the transport van, sat on plaintiff's back, forced plaintiff to his knees inside the van, repeatedly punched him in the head, and continued doing so despite plaintiff's complaints that he could not breathe.  *Id.* ¶¶ 17–20; Pl.'s Decl. ¶ 17–21.

C.O. LeConey was driving the transport van.  LeConey Dep., Dkt. No. 26-8 at 35–36.  Though she could not recall exactly where plaintiff was seated on that particular day, she testified that she generally ensures that inmates are within her line of vision.  *See* LeConey Dep. at 38–39 ("[W]henever I am escorting an inmate or driving an inmate anywhere, especially as a female officer, I always make sure that they have cuffs on and I make sure that they're sitting to the right of me at the front so that I could see them out of the corner of my eye.").  But according to plaintiff, C.O. LeConey did not attempt to stop C.O. Shoemaker's conduct or otherwise intervene.  Pl.'s Add'l Facts ¶¶ 1, 21; Pl.'s Decl. ¶¶ 19, 21.  Though plaintiff could not recall C.O. LeConey's identity at the time of his deposition, *see* Pl.'s Dep. at 61, he subsequently became aware of her name after reviewing DOCCS paperwork.  Pl.'s Decl. ¶ 29.

Shortly after the August 15 incident, plaintiff underwent another medical examination.  *See* Pl.'s Resp. ¶ 10; Aug. 15 Sec. Exam, Dkt. No. 26-12; Aug. 15 Injury Rep., Dkt. No. 26-20; Aug. 15 Use of Force Rep., Dkt. No. 26-21.  During that examination, medical staff noted that plaintiff's oral cavity was intact and he was able to walk.  *See id.*  But he had scratches to his forehead, abrasions to his shoulder, cuts and scrapes to his right wrist, lower lip, and both knees, and

complaints of rib pain.  *See* Pl.'s Resp. ¶ 11; Aug. 15 Sec. Exam; Aug. 15 Injury Rep.; Aug. 15 Use of Force Rep.

Around that time, officers searched plaintiff's cell and issued him a contraband receipt for a broken fan.  Pl.'s Resp. ¶ 12; Cell Frisk/Contraband Rep., Dkt. No. 26-23.  Plaintiff also received a misbehavior report authored by C.O. Ricci.  Pl.'s Resp. ¶¶ 13–15; Dkt. No. 26-26.  Later that day, plaintiff refused placement in voluntary protective custody, and he was subsequently transferred to Coxsackie Correctional Facility under contraband watch.  Dkt. No. 26-24; Dkt. No. 26-25.

The following week, plaintiff had a disciplinary hearing where he was found guilty of all disciplinary charges.  Pl.'s Resp. ¶ 16; *see* Dkt. No. 26-28.  Plaintiff was sanctioned with a term in the Special Housing Unit and corresponding loss of privileges, although those penalties were later modified on administrative review.  *See* Pl.'s Resp. ¶¶ 16–19.

## III.   LEGAL STANDARD

The entry of summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact is considered "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  In conducting this analysis, the court must draw all reasonable inferences in the light most favorable to the non-movant.  *Id*. at 255.  Even so, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.    DISCUSSION

Plaintiff asserts claims under 42 U.S.C. § 1983 arising from the alleged uses of force on July 13 and August 15, 2023.  *See* Compl.  Defendants now move for partial summary judgment on plaintiff's Eighth Amendment excessive force claim against C.O. Ricci based on the July 13 incident, plaintiff's Eighth Amendment failure-to-intervene claims against C.O. Bullock and C.O. LeConey based on the August 15 incident, and plaintiff's state-law assault and battery claim.  Dkt. No. 26.[3]  Plaintiff opposes summary judgment on his federal claims.[4]  Pl.'s Mem., Dkt. No. 33-3 at 6.

### A.    Compliance with Local Rule 56.1

As an initial matter, plaintiff argues that defendants' motion should be denied because defendants failed to submit an "accurate and complete" Statement of Material Facts as required by Local Rule 56.1.  Pl.'s Mem. at 9–11.  Local Rule 56.1(a) provides:

> **Statement of Material Facts**: Any motion for summary judgment shall contain a separate Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue.  Each fact listed shall set forth a specific citation to the record where the fact is established . . . <u>Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion</u>.

N.D.N.Y. Local Rule 56.1(a) (emphasis in original).  Specifically, plaintiff contends that defendants violated this rule by referencing facts in their memorandum of law that do not appear in their Statement of Material Facts.  *Id.*

---

[3] Defendants previously argued that summary judgment is proper because plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act.  *See* Dkt. No. 26-1 ("Def.'s Mem.") at 10–17.  Defendants have since withdrawn that point, Dkt. Nos. 31, 32, and plaintiff does not oppose defendants' request for summary judgment on his state-law assault and battery claim.  Accordingly, the Court addresses only defendants' remaining arguments regarding plaintiff's Eighth Amendment excessive force and failure to intervene claims.

[4]  Because plaintiff has not opposed defendants' request for summary judgment on plaintiff's third cause of action for assault and battery under New York law, *see* Pl.'s Mem., Dkt. No. 33-3 at 5, that claim will be dismissed.

The Court declines to deny the motion on that basis. To be sure, the Local Rules "are not empty formalities, and courts within this District have routinely denied a party's motion for summary judgment based on their failure to file a Statement of Material Facts." *Heylinger v. West*, 2021 WL 5605231, at *1 (N.D.N.Y. Nov. 2, 2021) (Dancks, M.J.) (collecting cases), *report and recommendation adopted*, 2021 WL 5585929 (N.D.N.Y. Nov. 30, 2021) (McAvoy, J.). But still, the Second Circuit has consistently expressed its strong "preference for adjudication of cases on their merits rather than on the basis of formalities." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *Miller v. Apfel*, 210 F.3d 355 (2d Cir. 2000) (expressing a "clear preference for adjudication on the merits"); *Jackson v. Mahoney*, 116 F.3d 465 (2d Cir. 1997) (same).

Plaintiff has responded to defendants' factual assertions, submitted a counterstatement of additional material facts, and the parties have fully briefed the merits of the motion. In addition, the Court has independently reviewed the record submitted by the parties and is satisfied that the motion may be resolved on its merits. Accordingly, the Court rejects plaintiff's procedural challenge and proceeds to defendants' substantive arguments.

**B.    C.O. Ricci's Motion for Summary Judgment on the July 13, 2023 Excessive Force Claim**

Defendants next argue that C.O. Ricci is entitled to summary judgment on plaintiff's Eighth Amendment excessive force claim stemming from the July 13, 2023, incident because plaintiff's injuries were insufficiently serious to constitute a constitutional violation. *See* Defs.' Mem. at 17–21.

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To prevail on an Eighth

Amendment excessive-force claim, a plaintiff must satisfy a subjective and an objective component: (1) subjectively, that the defendant acted "wanton[ly]," *i.e.*, "maliciously and sadistically to cause harm," and (2) objectively, that the defendant's actions violated "contemporary standards of decency." *Blyden v. Mancusi*, 186 F.3d 252, 262–63 (2d Cir. 1999) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7–8 (1992)); *see also Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) ("The key inquiry [as to the subjective element] is whether the alleged conduct involved 'unnecessary and wanton infliction of pain.'") (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)).

Defendants' argument focuses exclusively on the objective element. In particular, defendants note that plaintiff exhibited no visible injuries following the incident, retained full range of motion in his neck and extremities, received only conservative treatment, and testified that any pain resolved within approximately two days. *See* Pl.'s Resp. ¶¶ 4–9; Def.'s Mem. at 19–20.

Defendants' argument is unavailing. "When prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency always are violated.'" *Wright v. Goord*, 554 F.3d 255, 268–69 (2d Cir. 2009) (quoting *Hudson*, 503 U.S. at 9). And even assuming plaintiff's injuries were relatively minor, the absence of significant injury does not foreclose an Eighth Amendment excessive force claim. *See Hudson*, 503 U.S. at 7 ("The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it.").

Indeed, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7); *see also Wright*, 554 F.3d at 269 (finding summary

judgment improper "even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak" when "a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically").

The Second Circuit has identified five factors which courts should consider in determining whether prison officials acted maliciously or sadistically:

> the extent of the injury and the mental state of the defendant[;] . . .
> the need for the application of force; the correlation between that
> need and the amount of force used; the threat reasonably perceived
> by the defendants; and any efforts made by the defendants to temper
> the severity of a forceful response.

*Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

Applying those factors to the available evidentiary record, a reasonable jury could conclude that C.O. Ricci acted maliciously and sadistically, thus, violating contemporary standards of decency. According to plaintiff, C.O. Ricci grabbed him by the shirt collar, dragged him down a corridor, shoved him against a wall, smashed an orange against his head multiple times, and forced pieces of the orange into his mouth. *See* Pl.'s Add'l Facts ¶ 1–4; Pl.'s Decl. ¶ 2–5. Plaintiff further testified that he complied with C.O. Ricci's directives and did nothing to provoke the encounter. Pl.'s Add'l Facts ¶ 5–6; Pl.'s Decl. ¶ 6–7.

Viewed in the light most favorable to plaintiff, C.O. Ricci's alleged use of force was gratuitous and unrelated to any legitimate penological objective. *See Abascal v. Fleckenstein*, 2012 WL 638977, at *6 (W.D.N.Y. Feb. 27, 2012) (denying summary judgment where, although the plaintiff's injuries were minor, the alleged assault was "unprovoked and unrelated to any effort to maintain or restore discipline"). Further, as plaintiff points out, C.O. Ricci testified that he does

not recall the July 13 incident and therefore offers no competing account of the encounter. Pl.'s Mem. at 11 n.3; Ricci Dep., Dkt. No. 26-9, at 48.

In the absence of any evidence disputing plaintiff's account of the encounter or otherwise establishing that the force allegedly used was employed in a good-faith effort to maintain or restore discipline, the Court cannot conclude that plaintiff's excessive force claim arising from the July 13, 2023 incident fails as a matter of law. [5] *See Oakley v. Dolan*, 980 F.3d 279, 284 (2d Cir. 2020) (noting that the reasonableness inquiry is often a jury question).

## C.    Plaintiff's Failure-to-Intervene Claims

Defendants next seek summary judgment on plaintiff's § 1983 failure-to-intervene claims against C.O. Bullock and C.O. LeConey based on the alleged August 15, 2023, incident. Specifically, defendants argue that neither officer had a realistic opportunity to intervene in either alleged use of force or, alternatively, that both officers are entitled to qualified immunity. *See* Defs.' Mem. at 23–28.

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. New York City Dept. of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). This duty extends to situations where an officer witnesses another officer's use of excessive force. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases). Indeed, "[i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Id.* This

---

[5] Defendants also briefly argue that any failure-to-intervene claim concerning the July 13, 2023, incident must be dismissed because plaintiff identified only Ricci as a participant in that incident and did not identify any named defendant who had an opportunity to intervene. Defs.' Mem. at 21–23. The Court need not reach this argument. The Complaint does not appear to assert a failure-to-intervene claim arising from the July 13 incident, and plaintiff's opposition papers address only the August 15, 2023 failure -to-intervene claims against Bullock and LeConey. *See* Compl. ¶¶ 26–29; Pl.'s Mem. at 11–14.

is because "the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Smith v. Sawyer*, 435 F. Supp. 3d 417, 438 (N.D.N.Y. 2020) (citing *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016)).

An officer may therefore be held liable for failing to intervene where "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).

### 1. C.O. Bullock

Defendants argue that C.O. Bullock lacked a realistic opportunity to intervene in the alleged August 15 incident in plaintiff's dormitory cube because he was not in a position to observe it and, in any event, he was occupied with monitoring the remainder of the housing unit at that time. Defs.' Mem. at 23–25.

To be sure, "the officer faulted for failing to intervene must have had 'a realistic opportunity to intervene to prevent the harm from occurring.'" *Martinez v. City of N.Y.*, 564 F. Supp. 3d 88, 106 (E.D.N.Y. 2021) (quoting *Branen*, 17 F.3d at 557). But "[w]hether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Branen*, 17 F.3d at 557 (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)).

Importantly, there is no "bright-line rule" in a failure to intervene case. *Figueroa*, 825 F.3d at 107. Rather, these claims arise "out of a limitless variety of factual circumstances." *Id.* "In each case, the question whether a defendant had a realistic chance to intercede will turn on such

factors as the number of officers present, their relative placement, the environment in which they acted, the nature of the assault, and a dozen other considerations." *Id.*

Here, the record contains competing accounts of Bullock's ability to observe the incident and his opportunity to intervene. In his declaration, plaintiff stated that C.O. Bullock was stationed immediately outside plaintiff's cube, had a direct view of C.O. Ricci's, C.O. Shoemaker's, and C.O. Vanhouse's alleged assault, and did nothing to stop it. Pl.'s Add'l Facts ¶¶ 13–15; Pl.'s Decl. ¶¶ 14–15. And by plaintiff's estimate, the assault lasted between one and three minutes. Pl.'s Add'l Facts ¶ 11; Pl.'s Decl. ¶ 12.

C.O. Bullock, on the other hand, testified that he was in the day room at the time of the incident rather than immediately outside plaintiff's cube. Bullock Dep. at 55–57. According to Bullock, his responsibilities required him to monitor all of the inmates within the housing unit and, during the alleged assault, he was busy with other inmates in the day room. *Id.*

It is true that an officer generally cannot be held liable for failing to intervene where the alleged use of force occurred so "sudden[ly] and brief[ly]" that the officer had no realistic opportunity to prevent the harm. *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 428 n.9 (N.D.N.Y. 2009) (Suddaby, J.) (quoting *Brown v. Mravintz*, 2006 WL 3717417, at *6 (W.D. Pa. Dec. 14, 2006)). But the Second Circuit has declined to impose a rigid "temporal cutoff" in analyzing failure to intervene claims. *Figueroa*, 825 F.3d at 108 (holding that plaintiff's failure to intervene claims "were for the jury to decide," "even assuming that the assault lasted less than twenty seconds"). Rather, "courts must evaluate each case on its own facts, keeping in mind that circumstances other than an assault's duration might bear significantly on an officer's ability to stop it from happening." *Id.*

Accordingly, the fact that the alleged assault lasted only one to three minutes does not, standing alone, entitle C.O. Bullock to summary judgment. *See* Pl.'s Add'l Facts ¶ 9.  The relevant question is whether, viewing the evidence in the light most favorable to plaintiff, a jury could conclude that Bullock had a realistic opportunity to intervene. *See Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 288–89 (2d Cir. 2020) ("Although this evidence was disputed, the district court, in the context of a summary judgment motion, must view such evidence in the light most favorable to plaintiffs and draw all reasonable inferences in their favor.").

Crediting plaintiff's version of events, C.O. Bullock stood immediately outside the cube, had a direct view of the incident, and observed the assault for its duration. *See* Pl.'s Add'l Facts ¶¶ 13–15; Pl.'s Decl. ¶¶ 14–15.  A reasonable jury could conclude that such circumstances afforded C.O. Bullock sufficient time to recognize the alleged constitutional violation and intervene. Because resolution of that question turns on disputed facts and witness credibility, summary judgment is inappropriate. *See O'Neill*, 839 F.2d at 11–12.  Accordingly, summary judgment is inappropriate as to plaintiff's failure to intervene claim against C.O. Bullock.

### 2.  C.O. LeConey

Defendants similarly argue that summary judgment is proper because C.O. LeConey lacked a realistic opportunity to intervene during plaintiff's transport to the infirmary.  Defs.' Mem. at 25–26.  This argument is rejected for substantially the same reasons.

Here, as with the alleged assault in plaintiff's cube, the parties offer competing accounts of the trip to the infirmary.  Plaintiff alleges that C.O. Shoemaker forced him to his knees in the transport van, sat on his back, repeatedly punched him in the head, and continued doing so while plaintiff complained that he could not breathe.  Pl.'s Add'l Facts ¶¶ 17–20; Pl.'s Decl. ¶¶ 17–21. Plaintiff further alleges that this conduct occurred in C.O. LeConey's presence and that C.O. LeConey did not take any steps to stop it.  Pl.'s Add'l Facts ¶ 21; Pl.'s Decl. ¶¶ 19, 21.

Defendants, for their part, argue that "[C.O.] LeConey could not intervene while driving, and was attempting to transport the plaintiff to the infirmary as quickly as possible following what to her knowledge was a medical emergency."  Def.'s Mem. at 26.

Although C.O. LeConey testified that she does not specifically recall where plaintiff was seated during the transport, she explained that her general practice when transporting inmates is to seat them on the passenger side of the van so that they remain within her field of vision.  LeConey Dep. at 38 ("I always make sure that they're sitting to the right of me at the front so that I could see them out of the corner of my eye.").  A reasonable jury could infer from this testimony that C.O. LeConey was capable of observing plaintiff during the transport and therefore had an opportunity to perceive any use of force occurring inside the vehicle.

Whether C.O. LeConey could have safely stopped the vehicle, directed C.O. Shoemaker to cease the alleged assault, requested assistance, or otherwise intervened presents factual questions that cannot be resolved on the present record.  *See O'Neill*, 839 F.2d at 11–12.  Because the record does not permit that question to be resolved as a matter of law, summary judgment on plaintiff's failure to intervene claim against C.O. LeConey must be denied.

### 3. Qualified Immunity

Defendants raise a final argument that C.O. Bullock and C.O. LeConey are entitled to qualified immunity with respect to plaintiff's failure to intervene claims.  See Defs.' Mem. at 27–28.  The Court disagrees.

As an initial matter, defendants argue that, to the extent plaintiff seeks monetary damages against defendants in their official capacities, those claims are barred by the Eleventh Amendment.  Defendants are correct that the Eleventh Amendment generally bars suits for damages against state officials acting in their official capacities.  See *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Here, however, plaintiff's § 1983 claims are predicated on each defendant's alleged personal involvement in the asserted constitutional violations.  Plaintiff does not seek to impose official-capacity liability on the individual defendants.  Accordingly, the Court need not further address defendants' sovereign immunity argument.

The Court therefore turns to defendants' contention that Bullock and LeConey are entitled to qualified immunity.

Qualified immunity shields government officials from civil damages liability unless either (1) the official violated a statutory constitutional right, and (2) the right was "clearly established" at the time of the challenged conduct.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Put differently:

> The issues on qualified immunity are: (1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was "clearly established"; and (3) even if the right was "clearly established," whether it was "objectively reasonable for the officer to believe the conduct at issue was lawful."

*Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (citation omitted).

With these principles in mind, the Court turns to defendants' qualified immunity arguments.  Here, defendants contend that, "assuming *arguendo*[ ] that . . . [C.O.s] Bullock and LeConey did have the opportunity to intervene[,] it was objectively reasonable for both to believe their conduct did not violate a clearly established right" because "LeConey was attempting to transport the plaintiff to the infirmary as quickly as possible following what to her knowledge was a medical emergency," and "[C.O.] Bullock . . . was monitoring the rest of the incarcerated individuals in the dorm while the alleged incident was taking place in Plaintiff's cube."  Defs.' Mem at 28.

Defendants' qualified immunity argument depends upon their version of the disputed facts.  This position misunderstands well-settled summary judgment principles.  "When a defendant

official seeks summary judgment on the ground that he is entitled to qualified immunity, the motion should be granted if either the evidence, viewed in the light most favorable to the plaintiff, is insufficient to establish the violation of a statutory or constitutional right, or if that right was not clearly established at the time of the alleged violation." *Soto v. Gaudett*, 862 F.3d 148, 156 (2d Cir. 2017). A right is "clearly established" when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Carter v. Broome County*, 394 F. Supp. 3d 228, 244 (N.D.N.Y. 2019) (Hurd, J.) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Measured against this general body of law, defendants' qualified immunity arguments fall short. It was clearly established in August of 2023 that an officer may not stand by and permit an obvious violation of a person's constitutional rights when the officer has a realistic opportunity to intervene and prevent the harm. *See, e.g.*, *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001); *De Ponceau v. Bruner*, 2012 WL 1030415, at *6 n.11 (N.D.N.Y. Feb. 21, 2012) (Peebles, M.J.), *report and recommendation adopted*, 2012 WL 1014821 (N.D.N.Y. Mar. 23, 2012) (Suddaby, J.).

As discussed above, plaintiff has adduced evidence from which a reasonable juror could conclude that C.O. Bullock observed the alleged assault in the dormitory, and that C.O. LeConey observed the alleged assault during plaintiff's transport to the infirmary, yet neither officer intervened. Accordingly, this dispute over the material historical facts precludes the court from resolving the qualified immunity question as a matter of law.

Accordingly, defendants' motion for summary judgment on qualified-immunity grounds must be denied.

## V.     CONCLUSION

In sum, plaintiff's Eighth Amendment excessive force claim against C.O. Ricci arising from the July 13, 2023 incident survives summary judgment.  Plaintiff's Eighth Amendment failure-to-intervene claims against C.O. Bullock and C.O. LeConey arising from the August 15, 2023 incident likewise survive summary judgment, and neither defendant is entitled to qualified immunity at this stage.  Plaintiff's remaining claims arising from the August 15, 2023 incident—including his excessive-force claims against C.O. Ricci, C.O. Shoemaker, and C.O. Vanhouse and his failure-to-intervene claims against C.O. Ricci, C.O. Shoemaker, C.O. Vanhouse, and Sgt. Pape—were not the subject of the present motion and therefore remain pending as pleaded in the complaint and answer.  *See* Dkt. Nos. 1, 14.

Plaintiff's remaining claims are: (1) the First Cause of Action, alleging Eighth Amendment excessive-force claims under 42 U.S.C. § 1983 against C.O. Ricci premised on the events of the July 13, 2023 incident and against C.O. Ricci, C.O. Shoemaker, and C.O. Vanhouse arising from the August 15, 2023 incident; and (2) the Second Cause of Action, alleging Eighth Amendment failure-to-intervene claims under 42 U.S.C. § 1983 against C.O. Bullock and C.O. LeConey concerning the August 15, 2023 incident, as well as the failure-to-intervene claims against C.O. Ricci, C.O. Shoemaker, C.O. Vanhouse, and Sgt. Pape, which were not the subject of the present motion.

Plaintiff does not oppose dismissal of his Third Cause of Action for assault and battery under New York law, and that claim is therefore dismissed with prejudice.  Defendants' motion is otherwise denied.  Accordingly, the remaining claims shall proceed to trial.

Therefore, it is

**ORDERED** that

- 18 -

1. Defendants' motion for summary judgment (Dkt. No. 26) is **GRANTED** in part and **DENIED** in part;

2. Defendants' motion is **GRANTED** with respect to plaintiff's Third Cause of Action for assault and battery under New York law, and that claim is DISMISSED with prejudice; and

3. Defendants' motion is **DENIED** in all other respects;

4. Within thirty days of the date of this Decision and Order, counsel shall file a joint status report reporting on status of settlement and provide the Court with dates that the parties can commence trial.

The Clerk of the Court is directed to terminate the pending motions.

**IT IS SO ORDERED.**

Dated: July 23, 2026
Utica, New York.

Anthony J. Brindisi
U.S. District Judge